```
***** Bexar County Centralized Docket System *****
07/25/2017            - Services List By Cause Nbr -              12:10:15
                          Case 2017CI06162
Selection:   Case Number: 2017CI06162
  Style: GAIL HATHAWAY vs ALAMO WORKFORCE DEVELOPMENT INC
  Court: 150     Docket Type: OTHER EMPLOYMENT          Status: PENDING
                  Unpaid Balance:      0.00  Account Number:
Act
(S) Seq  Service Type/Dates:          Dist  Litigant Name:
   00001 CITATION CERTIFIED MAIL        150  ALAMO WORKFORCE DEVELOPMENT I
         Iss: 04/06/2017  Rec: 04/06/2017  Exe: 04/10/2017  Ret: 04/12/2017
         MO 040617 SIGNED BY JERRY O BRIAN
                      *** End of Data ***


Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  retrn main  add         top   bkwrd frwrd bot   AI    PI    quit
MA                                        »                              05/013
```

```
              ***** Bexar County Centralized Docket System *****
07/25/2017                 - Proceeding Information -              12:04:42
JURY FEE PAID                   Case 2017CI06162
Selection: █    Case Nbr: 2017CI06162       Qualifier
  Style: GAIL HATHAWAY vs ALAMO WORKFORCE DEVELOPMENT INC
  Court: 150    Docket Type: OTHER EMPLOYMENT           Status: PENDING
Actions:(A,M,P)      Unpaid Balance:      0.00  Account Number:
     Seq  Date Filed      Reel    Image    Page Cnt
     00001 04/04/2017
     DESC: SERVICE ASSIGNED TO CLERK 1
     00002 04/04/2017
     DESC: JURY FEE PAID
     00003 04/04/2017
     DESC: PETITION
           W/JD
     00004 04/19/2017
     DESC: LETTER TO DISTRICT CLERK
           FR: SHANNA M RAMIREZ
           RE: UPDATE FOR ALAMO WORKFORCE DEVELOPME
           NT INC

Enter-PF1---PF2---PF3---PF4---PF5--PF6---PF7--PF8---PF9--PF10--PF11--PF12---
      help  retrn main  add  build top  bkwrd frwrd bot   SI    TI   quit
MA                                      »                           05/013
```

```
                ***** Bexar County Centralized Docket System *****
07/25/2017                 - Proceeding Information -              12:04:52
JURY FEE PAID                    Case 2017CI06162
Selection:    Case Nbr: 2017CI06162    Qualifier
  Style: GAIL HATHAWAY vs ALAMO WORKFORCE DEVELOPMENT INC
  Court: 150    Docket Type: OTHER EMPLOYMENT            Status: PENDING
  Actions:(A,M,P)      Unpaid Balance:        0.00  Account Number:
     Seq   Date Filed      Reel    Image     Page Cnt
                    3
     00005 06/27/2017
     DESC: JURY DEMAND JURY FEE PAID
     00006 06/27/2017
     DESC: FOURTH AMENDED PETITION
     00007 07/21/2017
     DESC: ORIGINAL ANSWER OF
              ALAMO WORKFORCE DEVELOPMENT INC DBA WORK
              FORCE SOLUTIONS ALAMO
                       *** End of Data ***



Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  retrn main  add  build top  bkwrd frwrd bot   SI    TI   quit
MA                                        »                        05/013
```

FILED
4/4/2017 10:03:39 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Edgar Garcia

**2017CI06162**

citcml-sac1

CAUSE NO.

| | | |
|---|---|---|
| GAIL HATHAWAY | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ALAMO WORKFORCE | § | |
| DEVELOPMENT, INC., d/b/a WORKFORCE | § | |
| SOLUTIONS ALAMO | § | |
| | § | 150th JUDICIAL DISTRICT |
| Defendant. | § | |
| | § | |
| | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, GAIL HATHAWAY (hereinafter referred to as Plaintiff or "Hathaway"), and files this Plaintiff's Original Petition complaining of Defendant, ALAMO WORKFORCE DEVELOPMENT, INC., d/b/a WORKFORCE SOLUTIONS ALAMO (hereinafter referred to as Defendant or "WSA") and for cause of action would show this Honorable Court as follows:

I.

### PARTIES

1.    Plaintiff Hathaway is a resident of Bexar County, Texas.

2.    Defendant WSA is a non-profit Texas Corporation.  Service of process may be effected on WSA by certified mail, return receipt requested, through its Board Chair, Andrea Guajardo, Workforce Solutions Alamo, P.O. Box 1771, San Antonio, Texas 78296.

3.    This is a Level III case.

## II.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter and the parties to this case and all conditions precedent to the filing of this suit have been met and venue properly lies in Bexar County, Texas. The conduct Plaintiff complains of occurred in Bexar County, Texas.

## III.

## JURY DEMAND

5.    Plaintiff is requesting trial by jury and will tender the statutory jury fee.

## IV.

## AGENCY

6.    Whenever in this petition it is alleged that the Defendant WSA did any act or thing, it is meant that Defendant's officers, agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by Defendant WSA and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

## V.

## FACTS

7.    On or about April 6, 2016, Eva Esquivel (Esquivel), Director of External Communications for WSA, falsely accused Hathaway of awarding a janitorial service contract to Plaintiff's neighbor, the owner of Jani-King of San Antonio. The statement was patently untrue and was made in an effort to damage the reputation of Hathaway

PLAINTIFF'S ORIGINAL PETITION

2

in her office, profession and occupation as Executive Director of WSA. Esquivel also falsely reported to the Texas Workforce Commission that Hathaway had created a culture of fear, suspicion and retaliation. Plaintiff maintains that Esquivel made anonymous hot line calls concerning the administration of WSA by Hathaway. In truth and in fact, Hathaway inherited an organization that has had 12 executive directors in its 22-year history. Those 12 leaders of WSA stayed an average of 1 year and 8 months. Hathaway capably performed the daunting task of improving staff morale while eliminating unproductive and disruptive employees. Esquivel was appropriately terminated after she physically assaulted a co-worker. Hathaway was clearly the victim of employment harassment and a workplace tort (slander) at the hands of Esquivel.

      8.     On or about October 17, 2016, the contract attached as Exhibit "A" was extended for one year. In August 2016, Plaintiff was selected as a San Antonio Business Journal Women's Leadership Class winner. The former Chair of the WSA Board, who nominated Hathaway for this prestigious award, terminated her employment on November 7, 2016. There was no reason given for the public firing. WSA received an unqualified financial audit on their 87 million dollar operation at the end of 2016 prompting Board Members to ask, "Why did we fire Gail?" On December 9, 2016, the Texas Workforce Commission delivered its decision that Hathaway's employer fired her for a reason that was not misconduct connected with work. WSA did not contest that decision. The Board Members of WSA invoked their right to extend the contract for one year on October 17, 2016. The contract provides that Plaintiff could be terminated for "Cause" but such action requires the presence of certain criteria that includes: "the Board shall give the Executive written notice that the Board intends to terminate her employment with WSA for cause. Such written notice shall specify the particular act or acts, or failure to act, that are the basis for the decision to terminate the

PLAINTIFF'S ORIGINAL PETITION       3

contract for cause." WSA failed to give written notice and failed to specify the particular act or acts, or failure to act, that was the basis for the termination on November 7, 2016. WSA could have terminated the Plaintiff "Without Cause" but such action requires 14 days written notice to the Executive. WSA failed to give 14 days written notice to Hathaway.

## VI.
## SLANDER AND LIBEL

9.      The allegations made by Esquivel, both in writing and verbally were known by Defendant to be false or were made with reckless disregard as to whether they were true or false.   Nevertheless, these statements were communicated and published by Esquivel to Esmeralda Polinara-Ramirez, Cynthia Farias and the Texas Workforce Commission, without privilege for doing so, and Esquivel, Polinara-Ramirez, Farias and the Texas Workforce Commission knew and understood the allegations made about Plaintiff to have been made in an accusatory and defamatory context.

10.     When these defamatory statements were made and published by Esquivel and WSA, there was information available to Esquivel and WSA that raised serious doubts about the truth of the statements being communicated and published, but Esquivel and WSA made no effort to prevent the publishing of false statements to employees of WSA and the Texas Workforce Commission.  Esquivel was not punished or censured for doing so.  These false allegations were made intentionally, knowingly and with ill will, actual malice and reckless disregard for their truth or falsity, and without legal excuse or privilege.  The allegations about Hathaway tended to injure her reputation and expose her to public hatred, contempt, ridicule and financial injury, and to impeach her honesty, integrity, virtue and reputation. The conduct of Esquivel and

WSA was injurious to the office, profession and occupation of Hathaway, amounting to slander and libel per se.

VII.

## EMPLOYMENT HARASSMENT

11.     The conduct of Esquivel as outlined above, amounts to Employment Harassment. Esquivel utilized workplace torts, like slander and libel, to create an intimidating, hostile and offensive working environment within the WSA Organization. Esquivel went as far as falsely accusing Hathaway of having an illicit sexual relationship with another employee. The employment harassment was a proximate cause of damages sustained by Plaintiff.

VIII.

## EMPLOYMENT WRONGFUL ACTS

12.     The Slander and Libel, Employment Harassment and Breach of Contract all amount to Employment Wrongful Acts. All of the acts by Esquivel and WSA were a proximate cause of damages suffered by Plaintiff.

VIII.

## DAMAGES

13.     Plaintiff has been damaged as a result of Defendant's breach of contract in the amount of $151,000.00. Additionally, Plaintiff has lost fringe benefits in the amount of 28% of the $151,000.00 for life insurance; short term and long term disability; medical insurance, dental insurance and vision insurance. Plaintiff has incurred reasonable attorneys fees for the prosecution of this breach of contract action. Plaintiff will present this claim for attorneys' fees resulting from breach of contract as required by Section 38.002 of the Texas Civil Practice and Remedies Code.   Plaintiff will petition the Court

for the reasonable and necessary attorneys fees incurred to date and that will continue during the prosecution of this matter.

14.    The conduct of WSA, by and through its Director of External Communication, Esquivel, acting in the course and scope of her management duties, has proximately caused and produced the following actual damages to Hathaway in an amount set forth below for which she seeks judgment against WSA for the following elements of damage:

(a)    Shame and humiliation, emotional distress, mental anguish, and other psychological damages which Plaintiff has suffered in the past and which she will, in reasonable probability, suffer in the future.

(b)    Damage to her reputation which Plaintiff has suffered in the past and which she will, in reasonable probability, suffer in the future.

(c)    Loss of earnings and earning capacity, which Plaintiff has suffered in the past and loss of earning capacity that she will, in reasonable probability, suffer in the future.

(d)    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks monetary relief over $200,000.00 but not more than $1,000,000.00, including costs, expenses, pre- and post-judgment interests, and attorney's fees. Plaintiff further requests that the non-expedited rules apply in this case.

## VIII.

## EXEMPLARY DAMAGES

15.    The intentional libel and slander, as well as workplace harassment perpetrated by Esquivel on behalf of WSA was conduct calculated to cause harm to Hathaway and was conduct ratified by WSA. Plaintiff should be awarded punitive damages as a consequence of Defendant's outrageous conduct.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial of this cause, Plaintiff has and recovers of and from the Defendant actual damages for Libel and Slander, Employment Harassment, Employment Wrongful Acts and Breach of Contract in a sum within the jurisdictional limits of this Court, pre-and post-judgment interest as allowed by law, attorney's fees, costs of Court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

Dennis L. Richard
Texas Bar No. 16842600
100 N.E. Loop 410, Suite 610
San Antonio, Texas 78216
Main: (210) 314-5688
Fax: (210) 314-5687
Dennis.richard@kennardlaw.com

PLAINTIFF'S ORIGINAL PETITION

# EXHIBIT A

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made effective the 17th day of October, 2014, by and between Alamo Workforce Development, Inc., dba Workforce Solutions-Alamo, a Texas nonprofit corporation ("AWD") and Gail L. Hathaway, an individual residing in Bexar County, Texas ("Executive").

WHEREAS, AWD, under Texas law, is responsible for the management and oversight of the workforce development system in Atascosa, Bandera, Bexar, Comal, Frio, Gillespie, Guadalupe, Karnes, Kendall, Kerr, Medina and Wilson counties known as the Alamo Workforce Development Area;

WHEREAS, AWD has convened a search for a full-time, permanent Executive Director;

WHEREAS, Executive is skilled and knowledgeable in management of workforce development systems and funded programs;

WHEREAS, AWD desires to employ Executive and Executive desires to enter into the employment of AWD under the terms and conditions contained in this Agreement.

NOW THEREFORE, in consideration of the foregoing and mutual covenants set forth herein, AWD and Executive agree as follows:

### 1. **Employment**

Executive shall be employed by AWD in the capacity of Executive Director.

### 2. **Term of Employment**

Subject to the provisions for termination set forth below, the term of Executive's employment under this Agreement shall commence on October 22, 2014 ("Commencement Date") and shall continue for a period of two (2) years until October 21, 2016, with two options for AWD to renew for an additional term of one (1) year each. The first option may be exercised by AWD giving Executive at least thirty days written notice prior to October 21, 2016. If AWD exercises the first option, the second option may be exercised by AWD giving Executive at least thirty days written notice prior to October 21, 2017.

### 3. **Executive's Duties**

a. Executive's duties shall include, but are not limited to the following:
- Coordinate with the AWD Board of Directors ("Board") to establish a strategic vision for AWD
- Coordinate with the Board and its partners in the development of AWD's strategic and operational plans
- Lead plan implementation efforts to achieve AWD goals and objectives

- Oversee the preparation for budgets, plans, and reports
- Ensure operational compliance with applicable federal, state and local laws, rules, regulations and policies, including AWD rules, regulations and policies
- Manage AWD's day to day operations, personnel, finances and other activities in full compliance with the following:
  - all applicable laws and regulations (regardless of whether federal, state or local);
  - AWD's goals, objectives, plans and policies; and
  - the Board's instructions, resolutions, directives and performance review based work plans;
- Prepare information, reports and briefing materials on a regular basis to keep the Board and its Partners informed of activities, events and performance
- Establish and maintain effective working relationships with Board members, area business and industry leaders, elected officials, community organizations and the general public
- Make presentations to the public, business and community organizations, associations, and other groups as appropriate
- Monitor and evaluate the performance of AWD workforce programs, contractors and service providers
- Provide staff support to the Board and its committees
- Serve as a liaison between AWD and elected officials, state and federal agencies
- Serve as AWD's ambassador to the community — act as an advocate for AWD throughout the area.
- Perform other duties as described in the Executive Director Job Description approved by the Board or as may be assigned.

b. Executive shall devote all her business time, attention, skill and energies to the business of AWD. The expenditure of reasonable time for personal or outside business, charitable and professional activities shall not constitute a breach of this Agreement if such activities do not materially interfere with the Executive's performance of her duties and obligations, as solely determined by the Board.

c. Executive's duties may be reasonably modified at the discretion of the Board from time to time.

d. Executive expressly agrees that her responsibilities, duties, and loyalty to AWD shall be paramount and that she will refrain from engaging in any outside activities, investments, or business related endeavors whenever the Board, in its sole and exclusive discretion, determines that said activities, investments, or endeavors:

  i. create a conflict of interest or the appearance of a conflict of interest;
  ii. interfere or potentially interfere with the mission or goals of AWD;

Employment Agreement
Gail Hathaway

Page 2 of 6

iii.  subject AWD to liability or potential liability; and/or

iv.  create an actual or potential negative impact on AWD's image, reputation, or good-will.

Executive shall be subject and hereby agrees to comply with all AWD policies regarding outside employment for AWD employees. Executive hereby further agrees that Executive shall not undertake outside employment or consulting engagements without the express prior written consent of the AWD Board of Directors.

In addition to the foregoing, the Board shall have the right to require Executive to refrain from, cease, or curtail any activities (business or personal) whenever the Board determines in good faith that there are grounds for requiring Executive to do so.

Executive agrees that she shall immediately provide written notification to the Chair and Executive Committee of the Board whenever any of her actual or prospective activities, investments, and/or endeavors fall or may fall within the scope of this subsection 3.d.

### 4.  Compensation

In consideration for the duties and services to be performed pursuant to this Agreement by the Executive, AWD shall pay the Executive an annual gross base salary of $151,000.00. Executive's performance shall be evaluated for the six (6) month period after the Commencement Date by the AWD Executive Committee and thereafter on an annual basis on a date determined by the Board. After such annual performance evaluation, Executive's salary may be increased, decreased, and/or otherwise adjusted based on budgetary constraints, Executive's performance, and/or other factors deemed appropriate by the Board. In the sole and exclusive discretion of the Board, Executive may also be given a bonus in such amount, if any, that the Board may determine to be appropriate.

### 5.  Benefits

AWD shall provide the Executive with the following benefits:

a.  **Expenses.**  AWD shall reimburse Executive for all reasonable and allowable business expenses after Executive presents an itemized and documented account of expenditures, pursuant to AWD policy.

b.  **Other.**  AWD shall provide the Executive with employment benefits to the same extent as AWD provides to other AWD employees in accordance with AWD policy and subject to the same conditions, deletions, levels, costs, premiums qualifications, limits, modifications, and substitutions as AWD may make applicable to other employees, provided however, that Executive shall be entitled to four (4) weeks Paid Time Off ("PTO") at time of hire and after the

completion of one (1) year of service, Executive shall accrue PTO at the rate of 9.54 hours per pay period, and provided further that AWD shall have the right to supplement, delete, modify, or substitute any and all of said employee programs, benefits, policies or plans.

## 6. Termination of Agreement:

Executive's employment hereunder may be terminated in accordance with the following:

a.   **Cause.** AWD may terminate this Agreement for cause at any time. For purposes of this Agreement, Cause shall mean (i) the violation of AWD rules and policies; (ii) a breach of any provisions of this Agreement; (iii) the violation of any statute or law; (iv) misconduct connected with her work; (v) consistent failure to meet performance expectations; (vi) willful failure to comply with the instructions of the Board; (vii) conflict of interest (actual or apparent); (viii) commission or an illegal act or acts defrauding the AWD, the Board, or any of its Partners; or (ix) gross negligence or gross misconduct by the Executive against AWD or another AWD employee. In any case described in this Section 6(a), the Board shall give the Executive written notice that the Board intends to terminate her employment with AWD for cause. Such written notice shall specify the particular act or acts, or failure to act, that are the basis for the decision to terminate the contract for cause.

b.   **Without cause.** AWD, acting through the Board, may terminate this Agreement at any time upon fourteen (14) days written notice to the Executive. Upon termination without cause and only in such event, Executive shall be entitled to a severance allowance. Upon execution of a full and final release by Executive in favor of AWD and its representatives, AWD shall pay the Executive an amount equal to the Executive 's monthly salary for a period of ninety (90) days. Further, AWD shall continue to pay for the Executive 's health insurance benefits for a period of ninety (90) days.

c.   **Termination by Executive:** Executive may terminate this Agreement without cause at any time with sixty (60) days written notice to the Board unless a lesser time is mutually agreed to in writing provided however that Executive shall not take accrued or unused PTO in lieu of notice upon resignation. At the request of AWD, Executive may extend the employment relationship on a month to month basis.

## 7. Non-Solicitation of AWD Employees and Contractor Services.

For the period starting on the date hereof and ending twelve (12) months following the termination of Executive's employment for any reason, Executive will not, directly or indirectly, in any capacity or position, whether on her own behalf or on behalf of or in conjunction with any other person, persons, company, partnership,

corporation or business entity, at any place or location situated within the State of Texas:

a.   Solicit any person who is, at the time of such solicitation, an employee of AWD for the purpose or with the intent of enticing such employee to resign his/her employment;

b.   Solicit any contract or other engagement for contractor services from AWD.

8. **Venue**

This Agreement shall be construed in accordance with the laws of the State of Texas. The parties hereto agree that venue for any action arising out of this Agreement shall rest in Bexar County, Texas.

9. **Enforcement**

a.   Equitable Relief Authorized.  Executive acknowledges that in the event of a violation of any provision contained in this Agreement, AWD's business interests will be irreparably injured, the full extent of AWD 's damages will be impossible to ascertain, monetary damages will not be an adequate remedy for AWD, and AWD will be entitled to enforce this Agreement to prevent a breach or threatened breach of the Agreement by temporary, preliminary or permanent injunction or other equitable relief without the necessity of proving actual damage and without the necessity of posting bond or security, which Executive expressly waives. Executive also agrees that AWD may, in addition to injunctive relief, seek monetary damages for any breach of the provisions contained in this Agreement in addition to equitable relief and that the granting of equitable relief shall not preclude AWD from recovering monetary damages.

b.   Modification.  AWD and Executive represent that in entering into this Agreement it is their intent to enter into an agreement that contains reasonable employment and post-employment restrictions and that such restrictions be enforceable under law.  In the event that any court or other enforcement authority determines that any provision of this Agreement is overbroad or unenforceable by reason of the geographic scope, scope of prohibited activities, time frame, or any other reason, the parties authorize such court or other enforcement authority to modify the scope of the restriction so that it is enforceable to the greatest extent permissible.

c.   Severability.  If any provision of the Agreement is held to be invalid, illegal or unenforceable for any reason, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

Employment Agreement
Gail Hathaway

# CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____ COURT *(FOR CLERK USE ONLY):* _____

STYLED Gai Hathaway v. Alamo Workforce Development, Inc. d/b/a Workforce Solutions Alamo

*e.g., John Smith v. All American Insurance Co.; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name<br><br>Dennis L. Richard | Email<br><br>dennis.richard@kennardlaw.com | Plaintiff(s)/Petitioner(s)<br><br>Gail Hathaway | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: |
| Address<br><br>100 N.E. Loop 410, Ste. 610 | Telephone<br><br>210-314-5688 | | Additional Parties in Child Support Case |
| City/State/Zip<br><br>San Antonio, TX 78216 | Fax<br><br>210-314-5687 | Defendant(s)/Respondent(s)<br><br>Alamo Workforce Development, Inc | Custodial Parent |
| Signature<br><br>/s/ Dennis L. Richard | State Bar No<br><br>16842600 | d/b/a Workforce Solutions Alamo | Non-Custodial Parent |
| | | [Attach additional page as necessary to list all parties] | Presumed Father |

## 2. Indicate case type, or identify the most important issue in the case (select only 1):

| Civil | | | Family Law | |
|---|---|---|---|---|

**Civil**

| Contract | Injury or Damage | Real Property |
|---|---|---|
| *Debt Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract | ☐ Assault/Battery<br>☐ Construction<br>☒ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional<br>   Liability<br><br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability<br>   List Product<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/<br>   Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property |

**Family Law**

| Marriage Relationship | Post-judgment Actions<br>(non-Title IV-D) |
|---|---|
| ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☒ With Children<br>☐ No Children | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification —Other |

| | Title IV-D |
|---|---|
| | ☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order |

| Related to Criminal Matters | Other Family Law |
|---|---|
| ☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus-<br>   Pre-indictment<br>☐ Other | ☐ Enforce Foreign<br>   Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities<br>   of Minority<br>☐ Other |

| Parent-Child Relationship |
|---|
| ☐ Adoption/Adoption with<br>   Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental<br>   Rights<br>☐ Other Parent-Child |

| Employment | Other Civil | |
|---|---|---|
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☒ Other Employment | ☐ Administrative Appeal<br>☐ Antitrust/Unfair<br>   Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other |

## 3. Indicate procedure or remedy, if applicable (may select more than 1):

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

## 4. Indicate damages sought (do not select if it is a family law case):

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☒ Over $200,000 but not more than $1,000,000
☐ Over $1,000,000



2017CI06162 –P00004



Shanna M. Ramirez
*SMRamirez@CPSEnergy.com*
*Direct: (210) 353-5689*
*Direct Fax: (210) 353-4569*

April 18, 2017

Ms. Donna Kay McKinney
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, TX 78205

Re:     2015-CI-06162
        Gail Hathaway vs. Alamo Workforce Development Inc.

Dear Ms. McKinney:

        Our office received the attached citation related to the case referenced above in error. Please update your records to reflect that P.O. Box 1771, San Antonio TX 78296 is **not** an address for Alamo Workforce Development Inc.

Please do not hesitate to contact me if you have any questions.

                        Sincerely,

                        Shanna M. Ramirez
                        Director, Senior Counsel
                        Legal Services

CC: Dennis L. Richard
        100 NE Loop 410, Ste. 610
        San Antonio, TX 78216

FIRST-CLASS MAIL

neopost
04/18/2017
US POSTAGE $001.61²

ZIP 78205
041M11250142

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

2017 APR 19 P 2: 05

DEPUTY

BY_____

Donna Kay McKinney
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, TX 78205

CPS ENERGY
Post Office Box 1771
San Antonio, Texas 78296-1771

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY
2017 APR 19 P 2: 05
DEPUTY
BY

DOCUMENT SCANNED AS FILED

FILED
7/21/2017 1:47 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Michelle Garcia

Cause No. 2017-CI-06162

| | | |
|---|---|---|
| GAIL HATHAWAY | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 150th JUDICIAL DISTRICT |
| | § | |
| ALAMO WORKFORCE | § | |
| DEVELOPMENT, INC., d/b/a | § | |
| WORKFORCE | § | |
| SOLUTIONS ALAMO and EVA | § | |
| ESQUIVEL | § | BEXAR COUNTY, TEXAS |

## DEFENDANT ALAMO WORKFORCE DEVELOPMENT, INC., D/B/A WORKFORCE SOLUTIONS ALAMO'S ANSWER AND STATEMENT OF DEFENSES

TO THE HONORABLE COURT:

COMES NOW Defendant ALAMO WORKFORCE DEVELOPMENT, INC., d/b/a WORKFORCE SOLUTIONS ALAMO and files this Original Answer and Statement of Defenses to Plaintiff's First Amended Original Petition, and respectfully states as follows:

### General Denial

1.      Defendant denies each and every, all and singular, of the material allegations contained in Plaintiff's First Amended Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence before the Court and jury as required by law.

### Statement of Defenses

2.      Defendant affirmatively alleges that Plaintiff fails to state a claim upon which relief can be granted.

3.      Defendant affirmatively alleges that Plaintiff fails to plead her claims with the requisite specificity.

4.      Defendant affirmatively alleges that Plaintiff has wholly failed to mitigate her damages.

**Answer and Statement of Defenses – Page 1**

5.      Defendant affirmatively asserts the same-actor inference to the extent any individuals of its organization are alleged or found to have made any of the alleged adverse employment decisions or taken allegedly adverse employment actions.

6.      If any improper, illegal, or discriminatory action was taken against Plaintiff by any of Defendant's employees or representatives, which Defendant denies, it was outside the course and scope of that employee's employment and/or authority, contrary to Defendant's policies, and was not ratified, confirmed, or approved by Defendant. Thus, such actions cannot be attributed or imputed to Defendant.

7.      Defendant affirmatively alleges that it is not liable for exemplary or punitive damages as it is immune from such damages by the Texas Tort Claims Act.

8.      Defendant affirmatively alleges that it is governmental entity protected by sovereign immunity under the Texas Tort Claims Act and is immune from suit and/or liability as to the causes of action alleged in this lawsuit.

9.      Defendant affirmatively alleges that if the Plaintiff is suffering any damages whatsoever, or has incurred any expenses whatsoever, then such is due wholly or partially to conditions which pre-existed or pre-dated the incidents made the basis of this lawsuit.

10.      Defendant affirmatively alleges that Plaintiff's damages, if any, were not proximately caused by the acts or omissions of Defendant.

11.      Defendant affirmatively alleges that it acted in good faith to comply with the requirements of statutes under which Plaintiff's claims are brought in this action.

12.      Defendant affirmatively alleges that even if some impermissible motive were a factor in any employment decision concerning Plaintiff, a claim that Defendant expressly denies, the same decision(s) would have been reached for legitimate business reasons.

**Answer and Statement of Defenses – Page 2**

13.     Defendant affirmatively alleges that Plaintiff's future damages, if any, is limited under the after-acquired evidence doctrine.   Therefore, Plaintiff is barred from recovering damages for reinstatement and actual damages for the period after the Defendant discovered these grounds for termination of Plaintiff's employment.

14.     Defendant affirmatively alleges that it exercised reasonable care to promptly correct and/or prevent any harassing behavior and that Plaintiff unreasonably failed to take advantage of any preventive and/or corrective opportunities provided by Defendant or to avoid harm otherwise.

15.     Defendant gives notice that it intends to rely upon such other affirmative and other defenses as may become available or apparent during the course of discovery and reserves the right to amend its Answer to assert those defenses.

WHEREFORE, PREMISES CONSIDERED, Defendant asks that this court deny relief to Plaintiff and that Defendant be granted relief to which it is justly entitled.

Respectfully submitted,

**JACKSON WALKER L.L.P.**
112 E. Pecan, Suite 2400
San Antonio, TX  78205
(210) 978-7700
(210) 978-7734 - direct
(210) 242-4606 - Fax

By:    /s/Richard G. Garza
            Richard G. Garza
            State Bar No. 07737200
            Email:  rgarza@jw.com

ATTORNEYS FOR DEFENDANT,
ALAMO WORKFORCE DEVELOPMENT,
INC., d/b/a WORKFORCE SOLUTIONS
ALAMO

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the above and foregoing document has been served on July 21, 2017 by electronic mail transmission to the following:

Dennis L. Richard                                Dennis.richard@kennardlaw.com
Kennard Richard PC
100 N.E. Loop 410. Suite 610
San Antonio. Texas 78216


                                        _____/s/ Richard G. Garza_____
                                        Richard G. Garza

FILED
6/27/2017 5:25 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Christopher Morrow

CAUSE NO. 2017-CI-06162

| | | |
|---|---|---|
| GAIL HATHAWAY | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ALAMO WORKFORCE | § | |
| DEVELOPMENT, INC., d/b/a WORKFORCE | § | |
| SOLUTIONS ALAMO and | § | |
| EVA ESQUIVEL | § | |
| | § | 150th JUDICIAL DISTRICT |
| Defendants. | § | |
| | § | |
| | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, GAIL HATHAWAY (hereinafter referred to as Plaintiff or "Hathaway"), and files this Plaintiff's First Amended Original Petition complaining of Defendants, ALAMO WORKFORCE DEVELOPMENT, INC., d/b/a WORKFORCE SOLUTIONS ALAMO (hereinafter referred to as Defendant or "WSA") and EVA ESQUIVEL (hereinafter referred to as Defendant or "Esquivel") and for cause of action would show this Honorable Court as follows:

I.

### PARTIES

1.  Plaintiff Hathaway is a resident of Bexar County, Texas.

2.  Defendant WSA is a non-profit Texas Corporation. Service of process may be effected on WSA by delivering a copy of Plaintiff's First Amended Original Petition to Rick Garza, counsel for WSA, at Jackson Walker, 112 E. Pecan St. #2400, San Antonio,

TX 78205. Defendant Esquivel is an individual residing in Bexar County and service upon this Defendant may be effected by delivering a copy of Plaintiff's First Amended Original Petition to Rick Garza, counsel for WSA, at Jackson Walker, 112 E. Pecan St. #2400, San Antonio, TX 78205.

      3.    This is a Level III case.

## II.

## JURISDICTION AND VENUE

      4.    This Court has jurisdiction over the subject matter and the parties to this case and all conditions precedent to the filing of this suit have been met and venue properly lies in Bexar County, Texas. The conduct Plaintiff complains of occurred in Bexar County, Texas.

## III.

## JURY DEMAND

      5.    Plaintiff is requesting trial by jury and will tender the statutory jury fee.

## IV.

## AGENCY

      6.    Whenever in this petition it is alleged that the Defendant WSA and did any act or thing, it is meant that Defendant WSA's officers, agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by Defendant WSA and was done in the normal and routine course and scope of employment of Defendant WSA's officers, agents, servants, employees or representatives.

V.

**FACTS**

7.      On or about April 6, 2016, Esquivel, while acting as Director of External
Communications for WSA, falsely accused Hathaway of awarding a janitorial service
contract to Plaintiff's neighbor, the owner of Jani-King of San Antonio. The statement
was patently untrue and was made in an effort to harass Plaintiff and interfere with the
performance of Hathaway's contract of employment with WSA.  Esquivel also falsely
reported to the Texas Workforce Commission that Hathaway had created a culture of
fear, suspicion and retaliation at WSA. This statement was false and was intended to
prompt an investigation that would harass Hathaway and lead to Plaintiff's
termination. Esquivel resented being subordinate to a white executive director. On
more than one occasion, Esquivel gathered other Hispanic employees in her office to
criticize the white leadership at WSA. Plaintiff maintains that Esquivel made
anonymous hot line calls concerning the administration of WSA by Hathaway. In truth
and in fact, Hathaway inherited an organization that has had 12 executive directors in
its 22-year history. Those 12 leaders of WSA stayed an average of 1 year and 8 months.
Hathaway capably performed the daunting task of improving staff morale while
eliminating unproductive and disruptive employees. In an effort to discriminate
against Plaintiff because of her race, Esquivel circulated false allegations that Hathaway
was having an affair with her white Deputy Executive Director, Rusty Perry. Esquivel
was appropriately terminated after she physically assaulted a co-worker. Hathaway
was clearly the victim of employment harassment at the hands of Esquivel. This
conduct by Esquivel interfered with Plaintiff's enjoyment of the benefits, privileges,
terms and condition of the contractual relationship with WSA and said conduct
contributed to the wrongful termination of Hathaway's contract with WSA.

PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

8.    On or about October 17, 2016, the contract attached as Exhibit "A" was extended for one year. In August 2016, Plaintiff was selected as a San Antonio Business Journal Women's Leadership Class winner. The former Chair of the WSA Board, who nominated Hathaway for this prestigious award, terminated her employment on November 7, 2016. There was no reason given for the public firing. WSA received an unqualified financial audit on their 87 million dollar operation at the end of 2016 prompting Board Members to ask, "Why did we fire Gail?" On December 9, 2016, the Texas Workforce Commission delivered its decision that Hathaway's employer fired her for a reason that was not misconduct connected with work. WSA did not contest that decision. WSA breached her contract of employment because of race and because of the harassment visited upon Hathaway by Esquivel. The Board Members of WSA invoked their right to extend the contract for one year on October 17, 2016. The contract provides that Plaintiff could be terminated for "Cause" but such action requires the presence of certain criteria that includes: "the Board shall give the Executive written notice that the Board intends to terminate her employment with WSA for cause. Such written notice shall specify the particular act or acts, or failure to act, that are the basis for the decision to terminate the contract for cause." WSA failed to give written notice and failed to specify the particular act or acts, or failure to act, that was the basis for the termination on November 7, 2016. WSA could have terminated the Plaintiff "Without Cause" but such action requires 14 days written notice to the Executive. WSA failed to give 14 days written notice to Hathaway. The silence of WSA was an implied admission that there was no justification for the wrongful termination.

VI.
## VIOLATION OF 42 U.S.C. SECTION 1981

9.      Section 1981 prohibits all forms of racial discrimination that may occur throughout the contractual relations.  The conduct of Esquivel was calculated to interfere with the performance of Hathaway under her contract of employment with WSA and to diminish Plaintiff's standing in the eyes of the WSA Board.  The actions of Esquivel amounted to harassment under Section 1981 and retaliation against Hathaway for opposing race discrimination and the harassment thrust upon Plaintiff by Esquivel. The false allegations made by Esquivel to harass Plaintiff were published to Esmeralda Polinara-Ramirez, Cynthia Farias and the Texas Workforce Commission.  The WSA Board used the harassment perpetrated by Esquivel and the false allegations to wrongfully terminate Hathaway's employment.

VII.

## BREACH OF CONTRACT

10.     WSA allowed the written contract with Plaintiff to impliedly roll over for an additional year on or about October 21, 2016. The term for the roll over contract was one year at $151,000.00. There were two ways that WSA could lawfully end the contract. The first was for cause and required WSA to notify Hathaway with written notice that the WSA Board intends to terminate and said notice shall specify the particular act or acts, or failure to act, that are the basis for the decision to terminate the contract for cause. WSA failed to comply with the terms of the contract for termination with cause. The second was termination without cause. The terms of the contract provided that WSA could terminate at any time by giving the Plaintiff 14 days written notice. WSA failed to give any written notice and was therefore not in compliance with

the written agreement. By the terms of the Agreement signed on October 17, 2015, WSA has breached the contract and proximately caused the damages set forth below.

VIII.

DAMAGES

11.     Plaintiff has been damaged as a result of Defendant's breach of contract in the amount of $151,000.00. Additionally, Plaintiff has lost fringe benefits in the amount of 28% of the $151,000.00 for life insurance; short term and long term disability; medical insurance, dental insurance and vision insurance. Plaintiff has incurred reasonable attorneys fees for the prosecution of this breach of contract action. Plaintiff will present this claim for attorneys' fees resulting from breach of contract as required by Section 38.002 of the Texas Civil Practice and Remedies Code.   Plaintiff will petition the Court for the reasonable and necessary attorneys fees incurred to date and that will continue during the prosecution of this matter.

11.     The conduct of WSA and Esquivel amounts to violations of 42 U.S.C. Section 1981 and has proximately caused and produced the following actual damages to Hathaway in an amount set forth below for which she seeks judgment against WSA and Esquivel for the following elements of damage:

(a)     Shame and humiliation, emotional distress, mental anguish, and other psychological damages which Plaintiff has suffered in the past and which she will, in reasonable probability, suffer in the future.

(b)     Damage to her reputation which Plaintiff has suffered in the past and which she will, in reasonable probability, suffer in the future.

(c)     Loss of earnings and earning capacity, which Plaintiff has suffered in the past and loss of earning capacity that she will, in reasonable probability, suffer in the future.

(d)     Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks monetary relief over $200,000.00 but not more than $1,000,000.00, including costs, expenses, pre- and post-judgment interests, and attorney's fees. Plaintiff further requests that the non-expedited rules apply in this case.

VIII.

## EXEMPLARY DAMAGES

12.     The intentional race discrimination, work place harassment and retaliation for Plaintiff opposing race discrimination and harassment perpetrated by Esquivel and the WSA Board was conduct calculated to cause harm to Hathaway and was conduct ratified by WSA. Plaintiff should be awarded punitive damages as a consequence of Defendants' outrageous conduct.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial of this cause, Plaintiff has and recovers of and from the Defendants actual damages for violations of 42 U.S.C. Section 1981 and Breach of Contract in a sum within the jurisdictional limits of this Court, pre-and post-judgment interest as allowed by law, attorney's fees, costs of Court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

Dennis L. Richard
Texas Bar No. 16842600
100 N.E. Loop 410, Suite 610
San Antonio, Texas 78216
Main: (210) 314-5688
Fax: (210) 314-5687
Dennis.richard@kennardlaw.com

PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

# EXHIBIT A

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made effective the 17th day of October, 2014, by and between Alamo Workforce Development, Inc., dba Workforce Solutions-Alamo, a Texas nonprofit corporation ("AWD") and Gail L. Hathaway, an individual residing in Bexar County, Texas ("Executive").

WHEREAS, AWD, under Texas law, is responsible for the management and oversight of the workforce development system in Atascosa, Bandera, Bexar, Comal, Frio, Gillespie, Guadalupe, Karnes, Kendall, Kerr, Medina and Wilson counties known as the Alamo Workforce Development Area;

WHEREAS, AWD has convened a search for a full-time, permanent Executive Director;

WHEREAS, Executive is skilled and knowledgeable in management of workforce development systems and funded programs;

WHEREAS, AWD desires to employ Executive and Executive desires to enter into the employment of AWD under the terms and conditions contained in this Agreement.

NOW THEREFORE, in consideration of the foregoing and mutual covenants set forth herein, AWD and Executive agree as follows:

### 1. Employment

Executive shall be employed by AWD in the capacity of Executive Director.

### 2. Term of Employment

Subject to the provisions for termination set forth below, the term of Executive's employment under this Agreement shall commence on October 22, 2014 ("Commencement Date") and shall continue for a period of two (2) years until October 21, 2016, with two options for AWD to renew for an additional term of one (1) year each. The first option may be exercised by AWD giving Executive at least thirty days written notice prior to October 21, 2016. If AWD exercises the first option, the second option may be exercised by AWD giving Executive at least thirty days written notice prior to October 21, 2017.

### 3. Executive's Duties

a. Executive's duties shall include, but are not limited to the following:
   - Coordinate with the AWD Board of Directors ("Board") to establish a strategic vision for AWD
   - Coordinate with the Board and its partners in the development of AWD's strategic and operational plans
   - Lead plan implementation efforts to achieve AWD goals and objectives

Employment Agreement
Gail Hathaway

- Oversee the preparation for budgets, plans, and reports
- Ensure operational compliance with applicable federal, state and local laws, rules, regulations and policies, including AWD rules, regulations and policies
- Manage AWD's day to day operations, personnel, finances and other activities in full compliance with the following:
  - all applicable laws and regulations (regardless of whether federal, state or local);
  - AWD's goals, objectives, plans and policies; and
  - the Board's instructions, resolutions, directives and performance review based work plans;
- Prepare information, reports and briefing materials on a regular basis to keep the Board and its Partners informed of activities, events and performance
- Establish and maintain effective working relationships with Board members, area business and industry leaders, elected officials, community organizations and the general public
- Make presentations to the public, business and community organizations, associations, and other groups as appropriate
- Monitor and evaluate the performance of AWD workforce programs, contractors and service providers
- Provide staff support to the Board and its committees
- Serve as a liaison between AWD and elected officials, state and federal agencies
- Serve as AWD's ambassador to the community — act as an advocate for AWD throughout the area.
- Perform other duties as described in the Executive Director Job Description approved by the Board or as may be assigned.

b. Executive shall devote all her business time, attention, skill and energies to the business of AWD. The expenditure of reasonable time for personal or outside business, charitable and professional activities shall not constitute a breach of this Agreement if such activities do not materially interfere with the Executive's performance of her duties and obligations, as solely determined by the Board.

c. Executive's duties may be reasonably modified at the discretion of the Board from time to time.

d. Executive expressly agrees that her responsibilities, duties, and loyalty to AWD shall be paramount and that she will refrain from engaging in any outside activities, investments, or business related endeavors whenever the Board, in its sole and exclusive discretion, determines that said activities, investments, or endeavors:

  i.  create a conflict of interest or the appearance of a conflict of interest;
  ii. interfere or potentially interfere with the mission or goals of AWD;

iii. subject AWD to liability or potential liability; and/or

iv. create an actual or potential negative impact on AWD's image, reputation, or good-will.

Executive shall be subject and hereby agrees to comply with all AWD policies regarding outside employment for AWD employees. Executive hereby further agrees that Executive shall not undertake outside employment or consulting engagements without the express prior written consent of the AWD Board of Directors

In addition to the foregoing, the Board shall have the right to require Executive to refrain from, cease, or curtail any activities (business or personal) whenever the Board determines in good faith that there are grounds for requiring Executive to do so.

Executive agrees that she shall immediately provide written notification to the Chair and Executive Committee of the Board whenever any of her actual or prospective activities, investments, and/or endeavors fall or may fall within the scope of this subsection 3.d.

## 4. Compensation

In consideration for the duties and services to be performed pursuant to this Agreement by the Executive, AWD shall pay the Executive an annual gross base salary of $151,000.00. Executive's performance shall be evaluated for the six (6) month period after the Commencement Date by the AWD Executive Committee and thereafter on an annual basis on a date determined by the Board. After such annual performance evaluation, Executive's salary may be increased, decreased, and/or otherwise adjusted based on budgetary constraints, Executive's performance, and/or other factors deemed appropriate by the Board. In the sole and exclusive discretion of the Board, Executive may also be given a bonus in such amount, if any, that the Board may determine to be appropriate.

## 5. Benefits

AWD shall provide the Executive with the following benefits:

a.　*Expenses.* AWD shall reimburse Executive for all reasonable and allowable business expenses after Executive presents an itemized and documented account of expenditures, pursuant to AWD policy.

b.　*Other.* AWD shall provide the Executive with employment benefits to the same extent as AWD provides to other AWD employees in accordance with AWD policy and subject to the same conditions, deletions, levels, costs, premiums qualifications, limits, modifications, and substitutions as AWD may make applicable to other employees, provided however, that Executive shall be entitled to four (4) weeks Paid Time Off ("PTO") at time of hire and after the

completion of one (1) year of service, Executive shall accrue PTO at the rate of 9.54 hours per pay period, and provided further that AWD shall have the right to supplement, delete, modify, or substitute any and all of said employee programs, benefits, policies or plans.

## 6. Termination of Agreement:

Executive's employment hereunder may be terminated in accordance with the following:

a.    *Cause.* AWD may terminate this Agreement for cause at any time. For purposes of this Agreement, Cause shall mean (i) the violation of AWD rules and policies; (ii) a breach of any provisions of this Agreement; (iii) the violation of any statute or law; (iv) misconduct connected with her work; (v) consistent failure to meet performance expectations; (vi) willful failure to comply with the instructions of the Board; (vii) conflict of interest (actual or apparent); (viii) commission or an illegal act or acts defrauding the AWD, the Board, or any of its Partners; or (ix) gross negligence or gross misconduct by the Executive against AWD or another AWD employee. In any case described in this Section 6(a), the Board shall give the Executive written notice that the Board intends to terminate her employment with AWD for cause. Such written notice shall specify the particular act or acts, or failure to act, that are the basis for the decision to terminate the contract for cause.

b.    *Without cause.* AWD, acting through the Board, may terminate this Agreement at any time upon fourteen (14) days written notice to the Executive. Upon termination without cause and only in such event, Executive shall be entitled to a severance allowance. Upon execution of a full and final release by Executive in favor of AWD and its representatives, AWD shall pay the Executive an amount equal to the Executive 's monthly salary for a period of ninety (90) days. Further, AWD shall continue to pay for the Executive 's health insurance benefits for a period of ninety (90) days.

c.    *Termination by Executive:* Executive may terminate this Agreement without cause at any time with sixty (60) days written notice to the Board unless a lesser time is mutually agreed to in writing provided however that Executive shall not take accrued or unused PTO in lieu of notice upon resignation.  At the request of AWD, Executive may extend the employment relationship on a month to month basis.

## 7. Non-Solicitation of AWD Employees and Contractor Services.

For the period starting on the date hereof and ending twelve (12) months following the termination of Executive's employment for any reason, Executive will not, directly or indirectly, in any capacity or position, whether on her own behalf or on behalf of or in conjunction with any other person, persons, company, partnership,

corporation or business entity, at any place or location situated within the State of Texas:

    a.   Solicit any person who is, at the time of such solicitation, an employee of AWD for the purpose or with the intent of enticing such employee to resign his/her employment;

    b.   Solicit any contract or other engagement for contractor services from AWD

## 8. Venue

    This Agreement shall be construed in accordance with the laws of the State of Texas. The parties hereto agree that venue for any action arising out of this Agreement shall rest in Bexar County, Texas.

## 9. Enforcement

    a.   Equitable Relief Authorized.  Executive acknowledges that in the event of a violation of any provision contained in this Agreement, AWD's business interests will be irreparably injured, the full extent of AWD 's damages will be impossible to ascertain, monetary damages will not be an adequate remedy for AWD, and AWD will be entitled to enforce this Agreement to prevent a breach or threatened breach of the Agreement by temporary, preliminary or permanent injunction or other equitable relief without the necessity of proving actual damage and without the necessity of posting bond or security, which Executive expressly waives. Executive also agrees that AWD may, in addition to injunctive relief, seek monetary damages for any breach of the provisions contained in this Agreement in addition to equitable relief and that the granting of equitable relief shall not preclude AWD from recovering monetary damages.

    b.   Modification.  AWD and Executive represent that in entering into this Agreement it is their intent to enter into an agreement that contains reasonable employment and post-employment restrictions and that such restrictions be enforceable under law.  In the event that any court or other enforcement authority determines that any provision of this Agreement is overbroad or unenforceable by reason of the geographic scope, scope of prohibited activities, time frame, or any other reason, the parties authorize such court or other enforcement authority to modify the scope of the restriction so that it is enforceable to the greatest extent permissible.

    c.   Severability.  If any provision of the Agreement is held to be invalid, illegal or unenforceable for any reason, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

Employment Agreement
Gail Hathaway

10. **Miscellaneous**

a. This Agreement contains the entire Agreement between AWD and the Executive and shall not be amended, altered, or changed without a written document signed by both AWD and the Executive.

b. This Agreement supersedes cancels, nullifies and voids any previous agreement, written or oral between the parties.

c. All communications, including without limitation, any notices, consents, requests or approvals, required or permitted to be given hereunder will be in writing and will be deemed to have been duly given when hand delivered or dispatched by electronic or facsimile transmission (with receipt thereof confirmed), or upon having been mailed by United States mail, return receipt requested, postage prepaid, or upon having been sent by nationally recognized overnight carrier service,

If to AWD:      Chair of the Board of Directors

Alamo Workforce Development Inc.

115 E. Travis, Suite 220

San Antonio, TX 78205

If to Executive:   Gail L. Hathaway

24608 Birdie Ridge

San Antonio, Texas 78260

IN WITNESS WHEREOF the parties have executed this Employment Agreement on this 17th day of October, 2014.

Alamo Workforce Development, Inc.           Executive
d/b/a Workforce Solutions-Alamo             Gail L. Hathaway

By: _____           _____
     Susan J. Monahan
Title: Chair, Board of Directors

Employment Agreement
Gail Hathaway
1647002 2 SPSA/12389 0115 101714                 Page 6 of 6

CERTIFIED MAIL #70151660000034277250  **Case Number: 2017-CI-06162**

2017CI06162  S00001

**GAIL HATHAWAY**

*Plaintiff*

vs .

**ALAMO WORKFORCE DEVELOPMENT INC**

*Defendant*                                              **CITATION**

(Note: Attached document may contain additional litigants)

IN THE DISTRICT COURT
150th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

**"THE STATE OF TEXAS"**

**DIRECTED TO:** ALAMO WORKFORCE DEVELOPMENT INC D/B/A WORKFORCE SOLUTIONS
ALAMO BY SERVING THROUGH ITS BOARD CHAIR ANDREA GUAJARDO

PO BOX 1771
SAN ANTONIO TX 78296-1771

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk
who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you." Said petition was filed on the  4th
day of April, 2017.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS  6TH  DAY OF APRIL  A.D., 2017.

PETITION

DENNIS L RICHARD
ATTORNEY FOR PLAINTIFF
100 NE LOOP 410 610
SAN ANTONIO, TX 78216-5829



**Donna Kay M<sup>c</sup>Kinney**
**Bexar County District Clerk**
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By : *Lilyana Esquivel,* Deputy

m/o  4/6/17

Officer's Return

Came to hand on the  6th day of April 2017, A.D., at  3:05 o'clock P.M. and EXECUTED
(NOT EXECUTED) by  CERTIFIED MAIL, on the _____ day of _____, A.D., 20___,
by delivering to _____ a true copy of this
Citation, upon which I endorse the date of delivery, together with the accompanying
copy of the PETITION

Cause of failure to execute this Citation is _____.

**Donna Kay M<sup>c</sup>Kinney**
Clerk of the District Courts of
Bexar County, Texas

By : *Lilyana Esquivel,* Deputy

FILE COPY (DK003)

DOCUMENT SCANNED AS FILED

CERTIFIED MAIL #70151660000034277250  **Case Number: 2017-CI-06162**

2017CI06162   S00001

**GAIL HATHAWAY**

*Plaintiff*

vs .

**ALAMO WORKFORCE DEVELOPMENT INC**

*Defendant*                                   **CITATION**

(Note: Attached document may contain additional litigants)

IN THE DISTRICT COURT
150th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

**"THE STATE OF TEXAS"**

**DIRECTED TO:** ALAMO WORKFORCE DEVELOPMENT INC D/B/A WORKFORCE SOLUTIONS
ALAMO BY SERVING THROUGH ITS BOARD CHAIR ANDREA GUAJARDO

2:50 **FILED**
O'CLOCK _P_ M

APR 1 2 2017

DONNA KAY McKINNEY
District Clerk, Bexar County, Texas

BY _____
DEPUTY

PO BOX 1771
SAN ANTONIO TX 78296-1771

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk
who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you." Said petition was filed on the  4th
day of April, 2017.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 6TH DAY OF APRIL A.D. 2017.

PETITION

DENNIS L RICHARD
ATTORNEY FOR PLAINTIFF
100 NE LOOP 410 610
SAN ANTONIO, TX 78216-5829



**Donna Kay McKinney**
**Bexar County District Clerk**
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By : *Lilyana Esquivel*, Deputy

---

Officer's Return

Came to hand on the  6th day of April 2017, A.D., at  3:05 o'clock P.M. and EXECUTED
(NOT EXECUTED) by CERTIFIED MAIL, on the 10 day of APRIL , A.D. 2017,
by delivering to    Jerry O'Brian    a true copy of this
Citation, upon which I endorse the date of delivery, together with the accompanying
copy of the PETITION

Cause of failure to execute this Citation is _____ .

**Donna Kay McKinney**
Clerk of the District Courts of
Bexar County, Texas

By : *Lilyana Esquivel*, Deputy

RETURN TO COURT (DK003)

DOCUMENT SCANNED AS FILED



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)      $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery   $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

ALAMO WORKFORCE DEVELOPMENT INC D/B/A WORKFORCE SOLUTIONS
PO BOX 1771
SAN ANTONIO, TX 78296-1771

2017C106162  4/6/2017  CITCH  LILYANA ESQUIVEL

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7015 1660 0000 3427 7250





First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #

9590 9402 1373 5362 1666 25

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Donna Kay McKinney
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, TX 78205

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

2017 APR 12 P 2:51

BY _____ DEPUTY

CERTIFIED MAIL #70151660000034277250  **Case Number: 2017-CI-06162**

**GAIL HATHAWAY**
*Plaintiff*

vs.

**ALAMO WORKFORCE DEVELOPMENT INC**

*Defendant*                                **CITATION**

(Note: Attached document may contain additional litigants.)

2017CI06162   S00001

IN THE DISTRICT COURT
150th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

**"THE STATE OF TEXAS"**

**DIRECTED TO:** ALAMO WORKFORCE DEVELOPMENT INC D/B/A WORKFORCE SOLUTIONS
ALAMO BY SERVING THROUGH ITS BOARD CHAIR ANDREA GUAJARDO

PO BOX 1771
SAN ANTONIO TX 78296-1771

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk
who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 4th
day of April, 2017.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 6TH DAY OF APRIL A.D., 2017.

PETITION

DENNIS L RICHARD
ATTORNEY FOR PLAINTIFF
100 NE LOOP 410 610
SAN ANTONIO, TX 78216-5829



**Donna Kay M<sup>c</sup>Kinney**
**Bexar County District Clerk**
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By : *Lilyana Esquivel,* Deputy

---

Officer's Return

Came to hand on the  6th day of April 2017, A.D., at  3:05 o'clock P.M. and EXECUTED
(NOT EXECUTED) by  CERTIFIED MAIL, on the _____ day of _____, A.D., 20___,
by delivering to _____ a true copy of this
Citation, upon which I endorse the date of delivery, together with the accompanying
copy of the PETITION.

Cause of failure to execute this Citation is _____.

**Donna Kay M<sup>c</sup>Kinney**
Clerk of the District Courts of
Bexar County, Texas

By : *Lilyana Esquivel,* Deputy

ORIGINAL (DK003)



DOCUMENT SCANNED AS FILED

FILED
4/4/2017 10:03:39 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Edgar Garcia

**2017CI06162**

citcml-sac1

CAUSE NO. _____

| | | |
|---|---|---|
| GAIL HATHAWAY | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ALAMO WORKFORCE | § | |
| DEVELOPMENT, INC., d/b/a WORKFORCE | § | |
| SOLUTIONS ALAMO | § | |
| | § | 150th JUDICIAL DISTRICT |
| Defendant. | § | |
| | § | |
| | § | BEXAR COUNTY, TEXAS |

<u>**PLAINTIFF'S ORIGINAL PETITION**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, GAIL HATHAWAY (hereinafter referred to as Plaintiff or "Hathaway"), and files this Plaintiff's Original Petition complaining of Defendant, ALAMO WORKFORCE DEVELOPMENT, INC., d/b/a WORKFORCE SOLUTIONS ALAMO (hereinafter referred to as Defendant or "WSA") and for cause of action would show this Honorable Court as follows:

I.

<u>**PARTIES**</u>

1.    Plaintiff Hathaway is a resident of Bexar County, Texas.

2.    Defendant WSA is a non-profit Texas Corporation.  Service of process may be effected on WSA by certified mail, return receipt requested, through its Board Chair, Andrea Guajardo, Workforce Solutions Alamo, P.O. Box 1771, San Antonio, Texas 78296.

3.    This is a Level III case.

## II.

### JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter and the parties to this case and all conditions precedent to the filing of this suit have been met and venue properly lies in Bexar County, Texas.  The conduct Plaintiff complains of occurred in Bexar County, Texas.

## III.

### JURY DEMAND

5.    Plaintiff is requesting trial by jury and will tender the statutory jury fee.

## IV.

### AGENCY

6.    Whenever in this petition it is alleged that the Defendant WSA did any act or thing, it is meant that Defendant's officers, agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by Defendant WSA and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

## V.

### FACTS

7.    On or about April 6, 2016, Eva Esquivel (Esquivel), Director of External Communications for WSA, falsely accused Hathaway of awarding a janitorial service contract to Plaintiff's neighbor, the owner of Jani-King of San Antonio.  The statement was patently untrue and was made in an effort to damage the reputation of Hathaway

PLAINTIFF'S ORIGINAL PETITION

2

in her office, profession and occupation as Executive Director of WSA. Esquivel also
falsely reported to the Texas Workforce Commission that Hathaway had created a
culture of fear, suspicion and retaliation. Plaintiff maintains that Esquivel made
anonymous hot line calls concerning the administration of WSA by Hathaway. In truth
and in fact, Hathaway inherited an organization that has had 12 executive directors in
its 22-year history. Those 12 leaders of WSA stayed an average of 1 year and 8 months.
Hathaway capably performed the daunting task of improving staff morale while
eliminating unproductive and disruptive employees. Esquivel was appropriately
terminated after she physically assaulted a co-worker. Hathaway was clearly the victim
of employment harassment and a workplace tort (slander) at the hands of Esquivel.

8.    On or about October 17, 2016, the contract attached as Exhibit "A" was
extended for one year. In August 2016, Plaintiff was selected as a San Antonio Business
Journal Women's Leadership Class winner. The former Chair of the WSA Board, who
nominated Hathaway for this prestigious award, terminated her employment on
November 7, 2016. There was no reason given for the public firing. WSA received an
unqualified financial audit on their 87 million dollar operation at the end of 2016
prompting Board Members to ask, "Why did we fire Gail?" On December 9, 2016, the
Texas Workforce Commission delivered its decision that Hathaway's employer fired
her for a reason that was not misconduct connected with work. WSA did not contest
that decision. The Board Members of WSA invoked their right to extend the contract
for one year on October 17, 2016. The contract provides that Plaintiff could be
terminated for "Cause" but such action requires the presence of certain criteria that
includes: "the Board shall give the Executive written notice that the Board intends to
terminate her employment with WSA for cause. Such written notice shall specify the
particular act or acts, or failure to act, that are the basis for the decision to terminate the

DOCUMENT SCANNED AS FILED

contract for cause." WSA failed to give written notice and failed to specify the particular act or acts, or failure to act, that was the basis for the termination on November 7, 2016. WSA could have terminated the Plaintiff "Without Cause" but such action requires 14 days written notice to the Executive. WSA failed to give 14 days written notice to Hathaway.

VI.
SLANDER AND LIBEL

9.     The allegations made by Esquivel, both in writing and verbally were known by Defendant to be false or were made with reckless disregard as to whether they were true or false. Nevertheless, these statements were communicated and published by Esquivel to Esmeralda Polinara-Ramirez, Cynthia Farias and the Texas Workforce Commission, without privilege for doing so, and Esquivel, Polinara-Ramirez, Farias and the Texas Workforce Commission knew and understood the allegations made about Plaintiff to have been made in an accusatory and defamatory context.

10.     When these defamatory statements were made and published by Esquivel and WSA, there was information available to Esquivel and WSA that raised serious doubts about the truth of the statements being communicated and published, but Esquivel and WSA made no effort to prevent the publishing of false statements to employees of WSA and the Texas Workforce Commission. Esquivel was not punished or censured for doing so. These false allegations were made intentionally, knowingly and with ill will, actual malice and reckless disregard for their truth or falsity, and without legal excuse or privilege. The allegations about Hathaway tended to injure her reputation and expose her to public hatred, contempt, ridicule and financial injury, and to impeach her honesty, integrity, virtue and reputation. The conduct of Esquivel and

PLAINTIFF'S ORIGINAL PETITION

4

WSA was injurious to the office, profession and occupation of Hathaway, amounting to slander and libel per se.

### VII.

### EMPLOYMENT HARASSMENT

11.     The conduct of Esquivel as outlined above, amounts to Employment Harassment.  Esquivel utilized workplace torts, like slander and libel, to create an intimidating, hostile and offensive working environment within the WSA Organization. Esquivel went as far as falsely accusing Hathaway of having an illicit sexual relationship with another employee.  The employment harassment was a proximate cause of damages sustained by Plaintiff.

### VIII.

### EMPLOYMENT WRONGFUL ACTS

12.     The Slander and Libel, Employment Harassment and Breach of Contract all amount to Employment Wrongful Acts.  All of the acts by Esquivel and WSA were a proximate cause of damages suffered by Plaintiff.

### VIII.

### DAMAGES

13.     Plaintiff has been damaged as a result of Defendant's breach of contract in the amount of $151,000.00.  Additionally, Plaintiff has lost fringe benefits in the amount of 28% of the $151,000.00 for life insurance; short term and long term disability; medical insurance, dental insurance and vision insurance.  Plaintiff has incurred reasonable attorneys fees for the prosecution of this breach of contract action.  Plaintiff will present this claim for attorneys' fees resulting from breach of contract as required by Section 38.002 of the Texas Civil Practice and Remedies Code.   Plaintiff will petition the Court

DOCUMENT SCANNED AS FILED

for the reasonable and necessary attorneys fees incurred to date and that will continue during the prosecution of this matter.

14.     The conduct of WSA, by and through its Director of External Communication, Esquivel, acting in the course and scope of her management duties, has proximately caused and produced the following actual damages to Hathaway in an amount set forth below for which she seeks judgment against WSA for the following elements of damage:

(a)     Shame and humiliation, emotional distress, mental anguish, and other psychological damages which Plaintiff has suffered in the past and which she will, in reasonable probability, suffer in the future.

(b)     Damage to her reputation which Plaintiff has suffered in the past and which she will, in reasonable probability, suffer in the future.

(c)     Loss of earnings and earning capacity, which Plaintiff has suffered in the past and loss of earning capacity that she will, in reasonable probability, suffer in the future.

(d)     Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks monetary relief over $200,000.00 but not more than $1,000,000.00, including costs, expenses, pre- and post-judgment interests, and attorney's fees. Plaintiff further requests that the non-expedited rules apply in this case.

VIII.

### EXEMPLARY DAMAGES

15.     The intentional libel and slander, as well as workplace harassment perpetrated by Esquivel on behalf of WSA was conduct calculated to cause harm to Hathaway and was conduct ratified by WSA. Plaintiff should be awarded punitive damages as a consequence of Defendant's outrageous conduct.

6

DOCUMENT SCANNED AS FILED

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial of this cause, Plaintiff has and recovers of and from the Defendant actual damages for Libel and Slander, Employment Harassment, Employment Wrongful Acts and Breach of Contract in a sum within the jurisdictional limits of this Court, pre-and post-judgment interest as allowed by law, attorney's fees, costs of Court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

kennard
richard P.C.

Dennis L. Richard
Texas Bar No. 16842600
100 N.E. Loop 410, Suite 610
San Antonio, Texas 78216
Main: (210) 314-5688
Fax: (210) 314-5687
Dennis.richard@kennardlaw.com

PLAINTIFF'S ORIGINAL PETITION

7

# EXHIBIT A

**EMPLOYMENT AGREEMENT**

THIS AGREEMENT is made effective the 17th day of October, 2014, by and between Alamo Workforce Development, Inc., dba Workforce Solutions-Alamo, a Texas nonprofit corporation ("AWD") and Gail L. Hathaway, an individual residing in Bexar County, Texas ("Executive").

WHEREAS, AWD, under Texas law, is responsible for the management and oversight of the workforce development system in Atascosa, Bandera, Bexar, Comal, Frio, Gillespie, Guadalupe, Karnes, Kendall, Kerr, Medina and Wilson counties known as the Alamo Workforce Development Area;

WHEREAS, AWD has convened a search for a full-time, permanent Executive Director;

WHEREAS, Executive is skilled and knowledgeable in management of workforce development systems and funded programs;

WHEREAS, AWD desires to employ Executive and Executive desires to enter into the employment of AWD under the terms and conditions contained in this Agreement.

NOW THEREFORE, in consideration of the foregoing and mutual covenants set forth herein, AWD and Executive agree as follows:

1. **Employment**

    Executive shall be employed by AWD in the capacity of Executive Director.

2. **Term of Employment**

    Subject to the provisions for termination set forth below, the term of Executive's employment under this Agreement shall commence on October 22, 2014 ("Commencement Date") and shall continue for a period of two (2) years until October 21, 2016, with two options for AWD to renew for an additional term of one (1) year each. The first option may be exercised by AWD giving Executive at least thirty days written notice prior to October 21, 2016. If AWD exercises the first option, the second option may be exercised by AWD giving Executive at least thirty days written notice prior to October 21, 2017.

3. **Executive's Duties**

    a. Executive's duties shall include, but are not limited to the following:
    - Coordinate with the AWD Board of Directors ("Board") to establish a strategic vision for AWD
    - Coordinate with the Board and its partners in the development of AWD's strategic and operational plans
    - Lead plan implementation efforts to achieve AWD goals and objectives

Employment Agreement
Gail Hathaway

DOCUMENT SCANNED AS FILED

- Oversee the preparation for budgets, plans, and reports
- Ensure operational compliance with applicable federal, state and local laws, rules, regulations and policies, including AWD rules, regulations and policies
- Manage AWD's day to day operations, personnel, finances and other activities in full compliance with the following:
  - all applicable laws and regulations (regardless of whether federal, state or local);
  - AWD's goals, objectives, plans and policies; and
  - the Board's instructions, resolutions, directives and performance review based work plans;
- Prepare information, reports and briefing materials on a regular basis to keep the Board and its Partners informed of activities, events and performance
- Establish and maintain effective working relationships with Board members, area business and industry leaders, elected officials, community organizations and the general public
- Make presentations to the public, business and community organizations, associations, and other groups as appropriate
- Monitor and evaluate the performance of AWD workforce programs, contractors and service providers
- Provide staff support to the Board and its committees
- Serve as a liaison between AWD and elected officials, state and federal agencies
- Serve as AWD's ambassador to the community — act as an advocate for AWD throughout the area.
- Perform other duties as described in the Executive Director Job Description approved by the Board or as may be assigned.

b. Executive shall devote all her business time, attention, skill and energies to the business of AWD. The expenditure of reasonable time for personal or outside business, charitable and professional activities shall not constitute a breach of this Agreement if such activities do not materially interfere with the Executive's performance of her duties and obligations, as solely determined by the Board.

c. Executive's duties may be reasonably modified at the discretion of the Board from time to time.

d. Executive expressly agrees that her responsibilities, duties, and loyalty to AWD shall be paramount and that she will refrain from engaging in any outside activities, investments, or business related endeavors whenever the Board, in its sole and exclusive discretion, determines that said activities, investments, or endeavors:

   i.  create a conflict of interest or the appearance of a conflict of interest;
   ii.  interfere or potentially interfere with the mission or goals of AWD;

DOCUMENT SCANNED AS FILED

iii.  subject AWD to liability or potential liability; and/or

iv.  create an actual or potential negative impact on AWD's image, reputation, or good-will.

Executive shall be subject and hereby agrees to comply with all AWD policies regarding outside employment for AWD employees.  Executive hereby further agrees that Executive shall not undertake outside employment or consulting engagements without the express prior written consent of the AWD Board of Directors.

In addition to the foregoing, the Board shall have the right to require Executive to refrain from, cease, or curtail any activities (business or personal) whenever the Board determines in good faith that there are grounds for requiring Executive to do so.

Executive agrees that she shall immediately provide written notification to the Chair and Executive Committee of the Board whenever any of her actual or prospective activities, investments, and/or endeavors fall or may fall within the scope of this subsection 3.d.

4.  **Compensation**

In consideration for the duties and services to be performed pursuant to this Agreement by the Executive, AWD shall pay the Executive an annual gross base salary of $151,000.00. Executive's performance shall be evaluated for the six (6) month period after the Commencement Date by the AWD Executive Committee and thereafter on an annual basis on a date determined by the Board. After such annual performance evaluation, Executive's salary may be increased, decreased, and/or otherwise adjusted based on budgetary constraints, Executive's performance, and/or other factors deemed appropriate by the Board. In the sole and exclusive discretion of the Board, Executive may also be given a bonus in such amount, if any, that the Board may determine to be appropriate.

5.  **Benefits**

AWD shall provide the Executive with the following benefits:

a.  *Expenses.*  AWD shall reimburse Executive for all reasonable and allowable business expenses after Executive presents an itemized and documented account of expenditures, pursuant to AWD policy.

b.  *Other.*  AWD shall provide the Executive with employment benefits to the same extent as AWD provides to other AWD employees in accordance with AWD policy and subject to the same conditions, deletions, levels, costs, premiums qualifications, limits, modifications, and substitutions as AWD may make applicable to other employees, provided however, that Executive shall be entitled to four (4) weeks Paid Time Off ("PTO") at time of hire and after the

DOCUMENT SCANNED AS FILED

completion of one (1) year of service, Executive shall accrue PTO at the rate of 9.54 hours per pay period, and provided further that AWD shall have the right to supplement, delete, modify, or substitute any and all of said employee programs, benefits, policies or plans.

6. <u>**Termination of Agreement:**</u>

Executive's employment hereunder may be terminated in accordance with the following:

a.      *Cause.* AWD may terminate this Agreement for cause at any time. For purposes of this Agreement, Cause shall mean (i) the violation of AWD rules and policies; (ii) a breach of any provisions of this Agreement; (iii) the violation of any statute or law; (iv) misconduct connected with her work; (v) consistent failure to meet performance expectations; (vi) willful failure to comply with the instructions of the Board; (vii) conflict of interest (actual or apparent); (viii) commission or an illegal act or acts defrauding the AWD, the Board, or any of its Partners; or (ix) gross negligence or gross misconduct by the Executive against AWD or another AWD employee. In any case described in this Section 6(a), the Board shall give the Executive written notice that the Board intends to terminate her employment with AWD for cause. Such written notice shall specify the particular act or acts, or failure to act, that are the basis for the decision to terminate the contract for cause.

b.      *Without cause.* AWD, acting through the Board, may terminate this Agreement at any time upon fourteen (14) days written notice to the Executive. Upon termination without cause and only in such event, Executive shall be entitled to a severance allowance. Upon execution of a full and final release by Executive in favor of AWD and its representatives, AWD shall pay the Executive an amount equal to the Executive 's monthly salary for a period of ninety (90) days. Further, AWD shall continue to pay for the Executive 's health insurance benefits for a period of ninety (90) days.

c.      *Termination by Executive:* Executive may terminate this Agreement without cause at any time with sixty (60) days written notice to the Board unless a lesser time is mutually agreed to in writing provided however that Executive shall not take accrued or unused PTO in lieu of notice upon resignation. At the request of AWD, Executive may extend the employment relationship on a month to month basis.

7. <u>**Non-Solicitation of AWD Employees and Contractor Services.**</u>

For the period starting on the date hereof and ending twelve (12) months following the termination of Executive's employment for any reason, Executive will not, directly or indirectly, in any capacity or position, whether on her own behalf or on behalf of or in conjunction with any other person, persons, company, partnership,

Employment Agreement
Gail Hathaway

DOCUMENT SCANNED AS FILED

corporation or business entity, at any place or location situated within the State of Texas:

    a.   Solicit any person who is, at the time of such solicitation, an employee of AWD for the purpose or with the intent of enticing such employee to resign his/her employment;

    b.   Solicit any contract or other engagement for contractor services from AWD.

8. **Venue**

    This Agreement shall be construed in accordance with the laws of the State of Texas. The parties hereto agree that venue for any action arising out of this Agreement shall rest in Bexar County, Texas.

9. **Enforcement**

    a.   <u>Equitable Relief Authorized</u>.  Executive acknowledges that in the event of a violation of any provision contained in this Agreement, AWD's business interests will be irreparably injured, the full extent of AWD 's damages will be impossible to ascertain, monetary damages will not be an adequate remedy for AWD, and AWD will be entitled to enforce this Agreement to prevent a breach or threatened breach of the Agreement by temporary, preliminary or permanent injunction or other equitable relief without the necessity of proving actual damage and without the necessity of posting bond or security, which Executive expressly waives. Executive also agrees that AWD may, in addition to injunctive relief, seek monetary damages for any breach of the provisions contained in this Agreement in addition to equitable relief and that the granting of equitable relief shall not preclude AWD from recovering monetary damages.

    b.   <u>Modification</u>.  AWD and Executive represent that in entering into this Agreement it is their intent to enter into an agreement that contains reasonable employment and post-employment restrictions and that such restrictions be enforceable under law.  In the event that any court or other enforcement authority determines that any provision of this Agreement is overbroad or unenforceable by reason of the geographic scope, scope of prohibited activities, time frame, or any other reason, the parties authorize such court or other enforcement authority to modify the scope of the restriction so that it is enforceable to the greatest extent permissible.

    c.   <u>Severability</u>.  If any provision of the Agreement is held to be invalid, illegal or unenforceable for any reason, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.

Employment Agreement
Gail Hathaway

DOCUMENT SCANNED AS FILED



DOCUMENT SCANNED AS FILED

**Donna Kay McKinney**
Bexar County District Clerk
101 W. Nueva, Suite 217
SAN ANTONIO, TEXAS 78205

*RETURN SERVICE REQUESTED*

CERTIFIED MAIL

7015 1660 0000 3427 7250

FORCE SOLUTIONS
PO BOX 1771
SAN ANTONIO, TX 78296-1771

2017CI06162  4/6/2017  CITCM LILYANA ESQUIVEL

neopost
04/07/2017
USIPOSTAGE $06.98

FIRST-CLASS MAIL

ZIP 78205
041L12202049